IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL BRANDON LANE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | CIV-12-137-HE |
| v. | ) | |
| | ) | |
| JUSTIN JONES, Director, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se* and *in forma pauperis*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his convictions for Rape in the First Degree and Forcible Oral Sodomy (two counts) entered in a jury trial in the District Court of Payne County, Case No. CF-2005-599. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

According to Petitioner's pleadings filed in his direct appeal, an information was filed on July 25, 2005, in the District Court of Payne County, Oklahoma, Case No. CF-2005-599, charging Petitioner with the offenses of Rape in the First Degree, Rape by Instrumentation,

1

Forcible Oral Sodomy, and Burglary in the First Degree. In a second page of the information, the prosecution alleged that Petitioner had eight prior felony convictions. Following a preliminary hearing conducted on May 5, 2006, an amended information was filed in the district court charging Petitioner with the same four counts and an additional count of Forcible Oral Sodomy. The second page of the amended information charged that Petitioner had nine prior felony convictions.

On April 10, 2009, following a five-day jury trial, a jury returned a verdict of not guilty on the first degree burglary charge, but the jury was unable to reach verdicts on the remaining four counts, and a mistrial was declared. On April 20, 2009, a second amended information was filed omitting the burglary count, and a second trial on the remaining counts was conducted on August 31 to September 4, 2009. The jury returned verdicts of guilty on the rape and sodomy charges. The jury found Petitioner not guilty of the rape by instrumentation charge. As to the three counts on which guilty verdicts were returned, the jury recommended a sentence of thirty years of imprisonment on each count. On October 23, 2009, Petitioner was sentenced to thirty years of imprisonment on each of the three convictions, with the sentences to be served concurrently.

On appeal, Petitioner asserted in his first proposition that the trial court erred and denied him a fair trial by allowing the prosecutor to question Petitioner concerning his prearrest silence. Petitioner asserted in a second proposition that the trial court erred in permitting the prosecution to elicit evidence tending to show that Petitioner committed the crime of first degree burglary while prohibiting Petitioner from demonstrating that a jury had

acquitted him of that crime.  Petitioner contended that this evidentiary ruling denied him his Sixth Amendment right to present a defense.  In response, the state asserted that the trial court had not abused its discretion in making these rulings and that Petitioner's rights were not violated by the trial court's evidentiary rulings.

In a summary opinion issued March 8, 2011, the Oklahoma Court of Criminal Appeals ("OCCA") rejected Petitioner's claims and affirmed his convictions and sentences. Petitioner did not seek certiorari review of this decision.

In his Petition, Petitioner does not set forth specific grounds for habeas relief.  Rather, Petitioner merely refers to the Brief of Appellant filed in his direct appeal.  This incorporation of his state court pleading without argument indicates Petitioner does not comprehend the nature and jurisdictional limits of federal habeas review.  See, e.g., Mabry v. Johnson, 467 U.S. 504, 507 (1984)(federal habeas relief available only if petitioner's custody is in violation of Constitution); Pulley v. Harris, 465 U.S. 37, 41 (1984)("A federal court may not issue the writ on the basis of a perceived error of state law."); Smith v. Phillips, 455 U.S. 209, 221 (1982)("A federally issued writ of habeas corpus . . . reaches only convictions obtained in violation of some provision of the United States Constitution. . . . Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").  Nevertheless, it is assumed that Petitioner is presenting the same two claims he urged in his direct appeal and seeks habeas review based solely on the arguments in support of those claims presented in the Brief of Appellant.

II. <u>Standard of Review</u>

Because Petitioner's claims were denied by the OCCA on their merits, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard for reviewing these claims.   Under the AEDPA, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. <u>Id.</u> at 405-406, 413.  A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003).

With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-

4

25 (2002)(*per curiam*).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).

III. Error in Admission of Evidence of Prearrest Silence

At Petitioner's trial, the victim testified (TR vol. I, at 18-156) that in July 2005 she was nineteen years old and lived in a trailer house in a rural community with her 6-month-old infant and her younger sister.  She testified that Petitioner had been a neighbor of hers, that his mother and her mother had been close friends, and that the two families had socialized together since she and Petitioner were children although she had never been romantically involved with Petitioner.  The victim testified that during the night on July 23, 2005, she was alone in her residence with her infant son, that they were sleeping, and that she was awakened from her sleep by Petitioner who had somehow entered her locked home and her locked bedroom.  She testified that Petitioner brutally, sexually assaulted her at knife point.  At one point during the assault, the victim testified that she had thrown up in the bathroom of the residence.  Petitioner testified that her son woke up during the assault and began crying and that Petitioner then left her home.

After the assault, the victim testified that she took her son and drove to her boyfriend's parents' home, and law enforcement was notified of the assault.  A nurse testified (TR vol. II, at 15-139) that she examined the victim and obtained a description from the victim of the events that had transpired.  The nurse testified that the victim's body exhibited several areas of redness and bruising and a laceration on one wrist. The nurse testified that the victim's

injuries were consistent with the trauma and events the victim described to her.

A sheriff's deputy testified that he investigated the alleged assault the following morning, that he went to the victim's residence, and that he observed pry marks on the front and back doors of the residence. The deputy testified he also found a knife on the floor in the doorway area going into the victim's bedroom. The deputy testified that the victim had "mentioned throwing up" and that he observed a substance in the toilet of the residence's bathroom that was consistent with that statement. (TR vol. I, at 182).

Petitioner testified at his trial (TR vol. IV, at 34-127) and admitted he had nine prior felony convictions. Petitioner testified that on the night of the alleged assault he had visited the victim's home, that he then left and went to two bars and a convenience store, and that he later returned to her home, entered the home through an unlocked front door, and had consensual sex with the victim sometime around 2:30 in the morning. Petitioner admitted that he always carried a pocket knife. Petitioner testified he left the victim's home at her request and drove to a friend's house although he resided with his grandmother at that time.

He testified that the next morning the victim's younger sister came to the friend's house and asked Petitioner if he had sexually assaulted the victim. Petitioner testified that he denied doing so and that she left. Over Petitioner's defense counsel's objection, the prosecutor was allowed to ask Petitioner whether he attempted to contact the victim once he became aware that she had accused him of sexually assaulting her. Petitioner testified he did not attempt to contact the victim, that he then traveled to Tonkawa, Oklahoma, to visit some friends, and that he stayed there for a couple of weeks after his friend advised him it would

be best for him to go there until they could "find out what [was] going on." (TR vol. IV, at 112).

Petitioner testified he subsequently went to Mexico after learning a warrant had been issued for his arrest and because he was afraid of the victim's father.  He testified he wanted to make some money and that he traveled to Mexico with an individual in a truck bearing both Oklahoma and Mexican car tags, and that he stayed in Mexico for six or seven months. Petitioner testified he then went to Texas, Kentucky, Indiana, Louisiana, Oklahoma City, and finally to Colorado where he was arrested on the Oklahoma warrant.

In his appeal, Petitioner asserted that the prosecutor's cross-examination of him concerning his prearrest silence was improper under Okla. Stat. tit. 12, § 2401, as interpreted by the OCCA in Farley v. State, 717 P.2d 111 (Okla. Crim. App. 1986).  In Farley, the OCCA addressed the issue of whether a trial court committed reversible error under the state's evidence code by allowing the prosecution to refer to the appellant's "failure to come forward upon learning that there was a warrant out for his arrest." Id. at 112.  The appellate court determined in Farley that under the state's evidence code "evidence of prearrest silence does not increase the probability that a defendant's testimony is false" and therefore the prosecutor's inquiry "as to why a defendant did not turn himself in to make a statement to the police is improper" under Okla. Stat. tit. 12, § 2401.  Id. at 112-113.

In a summary opinion issued March 8, 2011, the OCCA found that no error occurred with respect to the admission of evidence concerning Petitioner's prearrest silence. Specifically, the court found:

> Evidence that [Petitioner] fled the alleged crime scene, and remained at large for seven months knowing that he was wanted on these charges, was relevant post-offense conduct tending to show [Petitioner's] consciousness of guilt. . . . Further, the use of a defendant's silence prior to arrest as a circumstance tending to show guilt does not violate the privilege against self-incrimination of the Fifth Amendment or Article II, section 21 of the Oklahoma Constitution. *Jenkins v. Anderson*, 447 US. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). [Petitioner] was not subjected to the type of questioning condemned by this Court in *Farley v. State*, 1986 OK CR 42, 717 P.2d 111, and no error occurred.

Response, Ex. 3, at 2 (Lane v. State, Case No. F-2009-960 (Okla.Crim.App. Mar. 8, 2011)(unpublished summary opinion))

Petitioner has not alleged that the OCCA's decision with respect to this issue contradicts Supreme Court precedent or that the OCCA reached a conclusion different from the Supreme Court on materially indistinguishable facts, in order to demonstrate that the OCCA's decision was "contrary to" Supreme Court jurisprudence.   Nor has Petitioner satisfied his burden of showing "that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," as is necessary to demonstrate an "unreasonable application" of controlling Supreme Court precedent. Woodford, 537 U.S. at 24-25.

In his direct appeal, Petitioner asserted that the prosecutor's cross-examination questioning was designed to prove Petitioner was guilty because he did not confront the victim. Petitioner's entire argument was directed toward the issue of whether the questioning was proper under state law.

8

In <u>Raffel v. United States</u>, 271 U.S. 494 (1926), the Supreme Court recognized that the Fifth Amendment's privilege against self-incrimination is not violated when a defendant testifies in his defense and is impeached with his prior silence.  In <u>Jenkins</u>, the Court revisited the same issue in addressing circumstances in which the "prosecutor attempted to impeach the petitioner's credibility [with his prearrest silence] by suggesting that the petitioner would have spoken out if he had killed in self-defense." <u>Id.</u> at 235.  The Supreme Court easily resolved the petitioner's Fifth Amendment argument and followed <u>Raffel</u> in holding that the Fifth Amendment is not violated by the use of prearrest silence to impeach a defendant's credibility. <u>Id.</u> at 238.

Addressing the petitioner's Fourteenth Amendment due process argument, the Court in <u>Jenkins</u> further held that "the fundamental fairness guaranteed by the Fourteenth Amendment" was not violated by the prosecutor's use of the petitioner's prearrest silence to impeach his credibility. <u>Id.</u> at 238-239.  The Court reasoned that "[c]ommon law traditionally has allowed witnesses to be impeached by the previous failure to state a fact in circumstances in which that fact naturally would have been asserted" and that it was the task of the states, as a matter of state evidentiary law, to formulate their own "rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." <u>Id.</u> at 239.  Only after the warnings required by <u>Miranda v. Arizona</u>, 284 U.S. 436, 467-473 (1966), has the Court found that a prosecutor cannot impeach a defendant's credibility on cross-examination by revealing that the defendant remained silent after his arrest.  In <u>Jenkins</u>, the Court found that impeachment of the

9

petitioner by use of his prearrest silence did not violate the Fourteenth Amendment because "no governmental action induced petitioner to remain silent before arrest" and the petitioner's "failure to speak occurred before the petitioner was taken into custody and given <u>Miranda</u> warnings." <u>Id.</u> at 240.

The OCCA's finding that no constitutional error occurred at Petitioner's trial was consistent with the Supreme Court's decision in <u>Jenkins</u>. During the time period about which the prosecutor inquired during cross-examination of Petitioner, Petitioner had not been arrested or given <u>Miranda</u> warnings and no governmental action had induced his prearrest silence. Moreover, Petitioner testified that he was innocent because he and the victim had consensual sex, but he admitted that he did not confront the victim concerning the assault charges. Petitioner's subsequent actions concerning his travels in and out of the country for the ensuing seven months were probative of the truthfulness of his testimony, particularly in light of his testimony that he had known the victim throughout his life and that his family and the victim's family had even shared a residence for a brief period of time. Thus, the OCCA's decision was not contrary to or an unreasonable application of the Supreme Court's governing precedent in <u>Jenkins</u>.

Additionally, even assuming that Petitioner is arguing the prosecutor's questioning violated the Fifth Amendment because the evidence was used to establish his guilt, and not merely to attack his credibility, "the Supreme Court has not yet ruled on whether pre-*Miranda* or prearrest silence . . . is protected by the Fifth Amendment so as to proscribe its use by the prosecution on the issue of guilt." <u>Carter v. Ward</u>, 347 F.3d 860, 863-864 (10th Cir.

2003)(internal quotations, brackets, and citation omitted).  Because "the Supreme Court specifically left that issue undecided," id., "[t]he absence of clearly established federal law is dispositive under § 2254(d)(1)." House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008). Without clearly established Supreme Court jurisprudence on the issue, it is not necessary to reach the questions of whether the state court decision was either contrary to or an unreasonable application of such law." Id.  Petitioner is not entitled to habeas relief concerning this issue.

IV. Error in Admission of Prior Bad Acts Evidence and Refusal to Admit Evidence of Acquittal of the "Bad Act"

During Petitioner's trial, a sheriff's deputy testified concerning his search of the victim's home and stated that he observed pry marks on the front and back doors of the residence.  On cross-examination, the deputy was asked by defense counsel whether he was "aware that in prior proceedings, [Petitioner] has been found not guilty of first degree burglary, are you not?" TR vol. I, at 208.  The prosecutor objected, and in a hearing outside of the presence of the jury defense counsel asserted that he had the right to present his client's previous acquittal on the burglary charge to the jury. TR vol. I, at 209-210.  After an overnight recess, the court stated its finding that under Okla. Stat. tit. 12, § 2401 the fact of the prior acquittal on the burglary offense in the first trial was not relevant to the charges being litigated in the second trial.  TR vol. II, at 3-4, 10.  The court sustained the objection, directed Petitioner's counsel to abide by the ruling, and admonished the jury to disregard defense counsel's last question posed to the sheriff's deputy and to consider only the offenses

11

that were the subject of the second trial. TR vol. II, at 4-7.  In closing arguments, the prosecutor reminded the jury that the sheriff's deputy had testified that there were "pry marks" on the doors of the victim's residence. TR vol. IV, at 164.  The Petitioner's objection was overruled. TR vol. IV, at 164-165.

In ground two, Petitioner asserts the same claim he raised in his second proposition in his direct appeal.  In that proposition, Petitioner asserted the trial court erred in allowing the prosecutor to elicit evidence "tending to show" Petitioner committed the offense of first degree burglary while prohibiting Petitioner from informing the jury he had been acquitted of this offense in the first trial. Response, Ex. 1, at 16.  In support of this argument, Petitioner invoked the Sixth Amendment's Confrontation clause and the Fourteenth Amendment's Due Process Clause. Response, Ex. 1, at 25.  Petitioner asserted that, assuming the pry-mark evidence was properly admitted during his trial under state evidentiary law as part of the *res gestae* of the alleged assault, the admission of the evidence violated his right to a fundamentally fair trial when he was not allowed to inform the jury of his acquittal of the burglary offense.

Petitioner has not alleged that the OCCA's decision with respect to this issue contradicts Supreme Court precedent or that the OCCA reached a conclusion different from the Supreme Court on materially indistinguishable facts, in order to demonstrate that the OCCA's decision was "contrary to" Supreme Court jurisprudence.   Nor has Petitioner satisfied his burden of showing "that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," as is necessary to

demonstrate an "unreasonable application" of controlling Supreme Court precedent. <u>Woodford</u>, 537 U.S. at 24-25.

In this case, the relevant federal law consists of the general principles that criminal defendants have "the right to a fair opportunity to defend against the State's accusation" and that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326 (2006); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973).   It is well-established law that "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." <u>Holmes</u>, 547 U.S. at 326-327 (internal quotations, ellipsis, and citations omitted).

In Oklahoma, evidence of uncharged other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." <u>Douglas v. State</u>, 951 P.2d 651, 673 (Okla. Crim. App. 1997), <u>cert. denied</u>, 525 U.S. 884 (1998).  In a similar case involving a question as the admissibility of other crimes evidence, the Supreme Court cautioned that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McQuire</u>, 502 U.S. 62, 67-68 (1991).  Rather, the issue in a federal habeas review of a state court conviction is whether the conviction violated Constitution, laws, or treaties of the United States. <u>Id.</u> at 68.

In Petitioner's direct appeal, the OCCA rejected Petitioner's claim under the State's well-established rules of evidence. The OCCA specifically found that "[o]ver [Petitioner's]

objection, the State elicited evidence that an investigator observed pry marks on the doors

of the victim's trailer after receiving the victim's report that the rapist broke into her locked

residence.   The State also questioned [Petitioner] about these pry marks during cross-

examination." Response, Ex. 3, at 3.

The OCCA  found that the pry-mark evidence was properly admitted "as part of the

*res gestae* of the charged crimes, even though it tended to show the commission of a crime

or bad act for which [Petitioner] was not on trial; and even though [Petitioner] was acquitted

of burglarizing the residence by a previous jury." Id. (citing Dowling v. United States, 493

U.S. 342 (1990), and Warner v. State, 144 P.3d 838, 868 (Okla. Crim. App. 2006)).  The

court then rejected Petitioner's argument that the trial court denied his constitutional right

to a fundamentally fair trial by excluding evidence of his previous acquittal.  The court

found:

> The pry marks were relevant to the charges of rape and sodomy,
> as the evidence of a break-in tended to corroborate the victim's
> account of events and undermine [Petitioner's] defense of
> consent.   The issue of [Petitioner's] guilt of the crime of
> burglary was never properly before the jury by way of evidence
> or instructions, and evidence of the previous jury's acquittal on
> [the burglary charge] was not relevant to the issues at this trial.
> 12 O.S. 2001, § 2401.  Even if minimally relevant, we find that
> such evidence could be properly excluded because its probative
> value was "substantially outweighed by the danger of unfair
> prejudice, confusion of the issues, misleading the jury, undue
> delay, needless presentation of cumulative evidence, or unfair or
> harmful surprise." 12 O.S.Supp.2003, § 2403.
> We see no reason to adopt a categorical rule applicable to this
> type of evidence, and will address its admission or exclusion on
> a case by case basis according to the principles of relevance in
> the Evidence Code. . . . We cannot say that the district court's

14

> exclusion of evidence that [Petitioner] was acquitted of burglary
> in his previous trial was an abuse of discretion in this case.

Id.

In support of his due process claim[1] asserted in his direct appeal, Petitioner argued that the Supreme Court's decision in Dowling was instructive.  In Dowling, the government, relying on Federal Rule of Evidence 404(b)(providing that evidence of other crimes, wrongs, or acts may be admissible against a defendant for purposes other than character evidence), introduced at the defendant's trial on bank robbery charges the testimony of a witness that the defendant, who was "similarly masked and armed" at the time, had robbed her two weeks after the bank robbery.  Id. at 342.  The defendant had been acquitted of the robbery of the witness.  The Court rejected the defendant's due-process claim based on the unfairness of admission of this evidence, recognizing that "the Due Process Clause has limited operation," that the fundamental fairness concept was thus defined "very narrowly," and the jury's verdict in the second trial "did not entail any judgment with respect to the offenses charged in his first." Id. at 352-353.

In this case, Petitioner objected to the introduction of the pry-mark evidence and to the trial court's refusal to allow him to inform the jury of his previous acquittal of the burglary offense.  The pry-mark evidence, as the OCCA found, "tended to corroborate the

---

[1]Petitioner did not clearly assert a double jeopardy claim in his direct appeal, and therefore no such claim will be addressed herein.  Petitioner argued only that "basic tenets of fairness" entitled him to inform the jury of his previous acquittal and the trial court committed error that was not harmless. Response, Ex. 1, at 30, 32.

15

victim's account of events and undermine [Petitioner's] defense of consent.  The issue of [Petitioner's] guilt of the crime of burglary was never properly before the jury by way of evidence or instructions, and evidence of the previous jury's acquittal on [the burglary charge] was not relevant to the issues at this trial. 12 O.S. 2001, § 2401." Response, Ex. 3, at 3.  The evidence of Petitioner's guilt was substantial in this case, including DNA evidence matching Petitioner's DNA sample on the victim's body, clothing, and hair (TR vol. III, at 35, 38, 40), medical evidence consistent with an assault rather than consensual sex, and Petitioner's own testimony of his flight.  Additionally, the prosecution did not dwell on the pry-mark evidence during closing argument but mentioned it only as one of multiple pieces of evidence that were consistent with Petitioner's guilt. (TR vol. IV, at 164-166).  Petitioner was able to present his defense that he and the victim had consensual sex, and the exclusion of the evidence that he had been acquitted of a burglary charge did not render his trial fundamentally unfair.  The acquittal was not relevant to the main issue of the trial, whether Petitioner was guilty of the sexual assault offenses, and the pry-mark evidence was relevant as it was consistent with the victim's testimony that Petitioner had broken into her home.  Petitioner has not demonstrated that the OCCA's decision in this respect was contrary to or an unreasonable application of controlling Supreme Court precedent.  Therefore, Petitioner is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their

respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ____August 22nd____ , 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____2nd____ day of ____August____, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE